

**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

05 OCT -3 AM 10:36

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | |
| Plaintiff, | |
| v. | |
| DUANE KIMBLE and CARENE KUNKLER, | |
| Defendants. | |

CIVIL ACTION NO.:

**1:05 CV 642**

**J. DLOTT**

**J. HOGAN**

## COMPLAINT

Plaintiff, Securities and Exchange Commission ("Commission"), for its Complaint against the Defendants, Duane Kimble and Carene Kunkler, alleges and states that:

### JURISDICTION AND VENUE

1.    This Court has jurisdiction over this action pursuant to Sections 21(d)(3) and 27 of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. §§ 78u(d)(3) and 78aa]. The defendants, directly and indirectly, made use of the mails and of the means and instrumentalities of interstate commerce in connection with the acts, practices and courses of business described in this Complaint.

2.    Pursuant to Section 27 of the Exchange Act [15 U.S.C. § 78aa], venue is proper in this Court because the Defendants reside in the Southern District of Ohio, and because acts constituting the defendants' violations occurred in the Southern District of Ohio.

### PARTIES

3.    Plaintiff Commission is an agency of the United States of America established by Section 4(a) of the Exchange Act [15 U.S.C. § 78d(a)]. The Commission is responsible for

-1-

enforcing the federal securities laws for the protection of investors. The Commission has offices in a number of locations, including 801 Cherry Street, 19th Floor, Fort Worth, Texas 76102.

4.    Defendant Kimble, age 44, is a resident of Hamilton, Ohio. Kimble served as the chief financial officer ("CFO") of Sight Resource Corporation ("SRC") from August 30, 2001 until he resigned on December 12, 2003.

5.    Defendant Kunkler, age 49, is a resident of Cincinnati, Ohio. Kunkler was the president, the chief executive officer ("CEO"), and a director of SRC from May 23, 2001 until she resigned on June 29, 2004.

## FACTS

6.    SRC, a Delaware corporation based in Cincinnati, Ohio, is in the business of manufacturing and selling eyewear. SRC operates eye care centers and an optical laboratory and distribution center in the United States. SRC's common stock is registered under Section 12(g) of the Exchange Act, and is quoted on the Pink Sheets. During the period relevant to this Complaint, SRC's common stock was quoted on the OTCBB, under the ticker symbol VISN. On June 24, 2004, SRC filed for Chapter 11 bankruptcy.

7.    In July 2001, SRC, which was based in Boston, merged with Eyeshop.com, Inc., an early-stage optical development company based in Cincinnati. Following the SRC-Eyeshop.com merger, SRC attempted to implement a new accounting software system. During the transition between accounting software systems and the move from Boston to Cincinnati, SRC experienced significant bookkeeping problems and was unable to perform basic accounting functions. For example, SRC was unable to reconcile its accounts due to the fact that historical financial data maintained on SRC's previous accounting system was, at times, inaccessible. Additionally, entries were not made to SRC's ledger until months after the accounting period closed.

8.     During the fiscal year that ended on December 28, 2002, in a misguided attempt to correct SRC's books and records, Kimble made journal entries, and directed two successive controllers to make journal entries, at each quarter end, with inadequate or incomplete supporting documentation.  Those entries were to balance sheet and profit and loss accounts.  For instance, during the quarter that ended on June 29, 2002, without adequate supporting documentation, and inconsistent with SRC's physical inventory results, Kimble increased an SRC inventory account by $130,000 and decreased an SRC manufacturing costs account by that amount, which improved SRC's earnings by $130,000 for the quarter.

9.     SRC's accounting errors, combined with unsubstantiated journal entries, caused SRC to overstate net income/understate net loss by approximately $703,000 for its quarter ended March 2002, $638,000 for its quarter ended June 2002, and $478,000 for its quarter ended September 2002.[1]  As a result, SRC reported net income of $299,000 for its quarter ended March 2002, when it should have reported a net loss of approximately $404,000; reported a net loss of $706,000 for its quarter ended June 2002, when it should have reported a net loss of approximately $1,344,000; and reported a net loss of $284,000, when it should have reported a net loss of $762,000, for its quarter ended September 2002.

10.     As a result of SRC's improper accounting, SRC purportedly remained in compliance with its bank loan debt covenants for the quarters ended June and September 2002.  The covenants prescribed, on a quarterly basis, a maximum allowable net loss for SRC.  If SRC violated its bank loan covenants, SRC could have been charged penalties and a higher interest rate, and possibly forced into bankruptcy.

11.     Kimble and Kunkler were aware of the accounting system problems that were impairing SRC's ability to maintain accurate books and records and, from time to time, took

---

[1]  An accounting firm SRC hired to help reconstruct its books determined these amounts.  SRC has not restated its financial statements, however.

steps to improve those systems. Nevertheless, both Kimble and Kunkler failed to take adequate corrective action to ensure that SRC's books and records were accurate and properly maintained. Additionally, Kimble's misguided attempts to correct the books only corrupted them further.

12. During SRC's 2002 fiscal year, SRC did not have accounting policy manuals or accounting internal controls training manuals. SRC, Kimble and Kunkler also failed to implement and maintain written policies and procedures in regard to recording deliveries of merchandise or recognition of revenue.

13. Kimble and Kunkler were aware that SRC lacked adequate internal controls. In particular, Kimble and Kunkler knew: (a) SRC's controls governing receivables, inventory, and customer refunds were weak; (b) account reconciliations were not consistently being performed on a timely basis; and (c) store managers were not promptly depositing cash from sales into SRC bank accounts.

14. On November 12, 2002, in preparation for filing its officer certifications pursuant to the Sarbanes-Oxley Act of 2002, Kunkler asked Kimble and SRC's controller, among others, to sign off on SRC's internal controls. However, because SRC did not have adequate internal controls in place, the controller refused to sign off on the company's controls.

15. Despite the fact that Kimble and Kunkler failed to implement adequate internal controls to ensure the accuracy of SRC's financial statements, and the fact that both Kimble and Kunkler were aware of the controller's refusal to sign off on SRC's internal controls, both Kimble and Kunkler certified that SRC had established and was maintaining adequate internal controls on November 18, 2002, in SRC's September 30, 2002 Form 10-Q.

16. During SRC's 2002 fiscal year, two SRC controllers resigned. The controllers were uncomfortable making journal entries without adequate documentation at Kimble's direction and frustrated by lax internal controls.

17.    In January 2003, SRC hired another new controller. SRC's new controller quickly discovered that: (a) accounts had not been reconciled for at least the fourth quarter of 2002, and possibly earlier periods; (b) SRC's accounts payable was out of balance by approximately $250,000; and (c) SRC needed to record additional journal entries in order to close its books for 2002. The controller discussed the need for the additional entries with Kimble, but was instructed by Kimble not to book the entries for improper reasons. Similarly, when Kunkler pressed Kimble for information on certain journal entries affecting SRC's financial statements, Kimble gave Kunkler misleading responses.

18.    In February 2003, SRC's auditor began its audit of SRC's 2002 financial statements. During the course of its audit, the auditor asked SRC's controller to assist in reconciling SRC's payroll expense. While attempting to reconcile SRC's payroll expense, the controller discovered that there was a discrepancy ($200,000 to $250,000) between SRC's December 2001 payroll expense accrual and the first payroll paid in January 2002, causing the controller to conclude that SRC's net loss for fiscal 2001 may have been understated. The controller prepared a worksheet for SRC's auditors that highlighted the issue. However, when the controller presented the worksheet to Kimble, Kimble informed the controller that he "didn't want to take any chance of reopening any 2001 issues" and instructed the controller to revise the worksheet. Reluctantly, the controller changed the worksheet in accordance with Kimble's instruction. Kimble presented the misleading worksheet to SRC's auditor.

19.    On March 23, 2003, the controller approached the audit partner and informed her that: (a) major accounts were not being reconciled; (b) Kimble had made, or directed others to make, numerous manual journal entries to adjust account balances without supporting documentation; (c) Kimble did not properly record certain transactions; and (d) Kimble was withholding information from and providing misleading information to Kunkler and SRC's auditor.

-5-

20.     Between March 24 and 25, 2003, the audit partner notified Kunkler and SRC of the controller's allegations. On March 26, 2003, the audit partner notified Kimble and Kunkler that a material weakness letter would be issued to SRC. On March 27, 2003, during an audit committee meeting, which Kimble and Kunkler attended, the audit partner stated that: (a) SRC may need to restate past financial statements; (b) a material weakness letter would be issued to SRC; (c) she was not certain when the audit would be completed, and significant areas pending audit completion included reconciliation of cash, accounts receivable, and allowance for bad debts; and (d) manual journal entries, inventories, income taxes, fourth quarter review, subsequent events, and the Form 10-K were still being reviewed by the audit firm.

21.     On March 28, 2003, SRC filed a Form 12b-25 with the Commission, stating that SRC was unable to file its Form 10-K on time for the year ended December 28, 2002, because: "[t]he Company and its auditors are in the final stages of completing the information required in the Company's Form 10-K. The accounting for the refinancing transactions completed on December 31, 2002 (refer to the Company's Form 8-K filed January 9, 2003) has taken longer than anticipated due to its complexity. Since the refinancing transactions had a material impact on the Company's capital structure and liquidity, the Company anticipates showing pro forma financial statements and financial footnotes thereto to provide additional meaning to the reader of such financial statements. Further, the Company's testing of potential asset impairment under SFAS No. 142 and 144 has taken longer than anticipated and requires additional information from valuation experts."[2] According to the filing, no significant change in results of operations from the corresponding period for the last fiscal year will be reflected by the earnings statements to be included in the subject report or portion thereof.

---

[2] The instructions in Form 12b-25 required SRC to state "in reasonable detail the reasons why" the company could not file its Form 10-K "within the prescribed time period."

22.     The March 28, 2003 Form 12b-25 failed to disclose the information that the audit partner had shared with SRC, Kimble, and Kunkler the day before (see paragraph 17 above). As a result, the Form 12b-25 was false and misleading. Kimble prepared the Form 12b-25, Kunkler reviewed it prior to its filing, and Kimble signed it.

23.     Additionally, SRC failed to attach to the March 28, 2003 Form 12b-25 a statement from its outside auditors as to the reason for their inability to supply an unqualified report by the company's filing deadline (which Rule 12b-25(c) requires).

24.     On April 7, 2003, during an audit committee meeting, SRC's auditor informed Kunkler, among others, that SRC's books were in disarray and the company needed to bring in another firm to help restore its books. During an April 10, 2003 audit committee meeting, Kunkler and others discussed hiring an outside accounting firm to help reconstruct the company's books.

25.     On April 14, 2003, SRC filed Forms 12b-25/A and 8-K with the Commission, stating that SRC was still unable to file its Form 10-K "due to the fact that its financial statements for the year ended December 28, 2002 have not been finalized. While the accounting for the refinancing transaction consummated on December 31, 2002...has largely been completed, other steps in the preparation of the year-end statements have not been finalized. There will be charges for asset impairment under SFAS Nos. 142 and 144, but the amount of those charges (presently estimated to be between $2,700,000 and $3,300,000) has not yet been determined. In addition, the Company is still in the process of finalizing various accounting entries and completing other steps required for the year-end closing." SRC also noted in the filings that it anticipated completing its Form 10-K during the week of April 28.

26.     SRC's April 14, 2003 Forms 12b-25/A and 8-K failed to disclose, as noted above, that SRC's controller had alleged serious accounting improprieties and SRC's auditor had identified serious problems with SRC's books, records, and internal controls. Therefore, SRC's

April 14, 2003 Forms 12b-25/A and 8-K were false and misleading. The Forms were reviewed by Kunkler and Kimble prior to their filing, and they were signed by Kimble.

27.     Eventually, on May 12, 2003, SRC filed a Form 12b-25/A that stated, among other things, that "[t]he Company's internal controls over financial reporting appear to be inadequate and should be strengthened." The May 12, 2003 Form 12b-25/A also disclosed that SRC's financial statements could not be completed until certain entries and accounts were substantiated, reconciled or corrected, and that SRC was retaining an accounting firm to assist the company in determining whether the entries were accurate or inaccurate and, if inaccurate, whether "the inaccuracy was caused by system error or deficiency, error in judgment, negligence, intentional action, or other cause."

## FIRST CLAIM

### Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Thereunder

28.     Paragraphs 1 through 27 above are hereby re-alleged, and incorporated herein by reference.

29.     Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. §240.10b-5] prohibit any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange, to employ any device, scheme or artifice to defraud, to make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or to engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

30.     As a result of the conduct described above, Kimble violated Section 10(b) of the Exchange Act and Rule 10b-5 thereunder.

## SECOND CLAIM

### Aiding and Abetting Violations of Section 13(a) of the Exchange Act and Rules 12b-20, 12b-25, 13a-11 and 13a-13 Thereunder

31.     Paragraphs 1 through 27 above are hereby re-alleged, and incorporated herein by reference.

32.     Section 13(a) of the Exchange Act [15 U.S.C. § 78m(a)] and Rules 13a-11 and 13a-13 thereunder [17 C.F.R. §§ 240.13a-1 and 240.13a-13] require issuers of registered securities, such as SRC, to file with the Commission current reports and quarterly reports. Exchange Act Rule 12b-20 [17 C.F.R. § 240.12b-20] provides that, in addition to the information expressly required to be included in a report, there shall be added such further material information, if any, as may be necessary to make the required statements, in the light of the circumstances under which they are made, not misleading. Rule 12b-25 under the Exchange Act [17 C.F.R. § 240.12b-25] requires an issuer of registered securities, such as SRC, that fails to file a quarterly report within the time prescribed for such report, to file a Form 12b-25 with the Commission, disclosing the registrant's inability to file the report timely and the reasons therefor in reasonable detail.

33.     As a result of the conduct described above, SRC violated, and Kunkler and Kimble aided and abetted SRC's violations of, Section 13(a) of the Exchange Act and Rules 12b-20, 12b-25, 13a-11, and 13a-13 thereunder.

## THIRD CLAIM

### Aiding and Abetting Violations of Sections 13(b)(2)(A) and 13(b)(2)(B) of the Exchange Act

34.     Paragraphs 1 through 27 above are hereby re-alleged, and incorporated herein by reference.

35. Section 13(b)(2)(A) the Exchange Act [15 U.S.C. § 78m(b)(2)(A)] requires all issuers to make and keep books, records, and accounts that, in reasonable detail, accurately and fairly reflect their transactions and dispositions of their assets.

36. As a result of the conduct described above, SRC violated, and Kunkler and Kimble aided and abetted SRC's violation of, Section 13(b)(2)(A) of the Exchange Act.

37. Section 13(b)(2)(B) of the Exchange Act [15 U.S.C. § 78m(b)(2)(B)] requires issuers to devise and maintain an adequate system of internal accounting controls.

38. As a result of the conduct described above, SRC violated, and Kunkler and Kimble aided and abetted SRC's violation of, Section 13(b)(2)(B) of the Exchange Act.

## FOURTH CLAIM

### Violation of Exchange Act Rule 13a-14

39. Paragraphs 1 through 27 above are hereby re-alleged, and incorporated herein by reference.

40. Exchange Act Rule 13a-14 [17 C.F.R. § 240.13a-14] requires an issuer's principal executive and financial officer to certify in each quarterly and annual report filed or submitted by the issuer under Section 13(a) of the Exchange Act [15 U.S.C. § 78m(a)], that: they have reviewed the report; and that based on their knowledge, the report does not contain any untrue statement of material fact or omit to state a material fact necessary in order to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by the report.

41. As a result of the conduct described above, Kunkler and Kimble violated Rule 13a-14 under the Exchange Act [17 C.F.R. § 240.13a-14], by filing a false and misleading Sarbanes Oxley Act certification in connection with SRC's Form 10-Q for the quarter ended September 28, 2002.

## FIFTH CLAIM

### Violations of Section 13(b)(5) of the Exchange Act

42.     Paragraphs 1 through 27 above are hereby re-alleged, and incorporated herein by reference.

43.     Section 13(b)(5) of the Exchange Act [15 U.S.C. § 78m(b)(5)] prohibits any person from knowingly circumventing or failing to implement an issuer's system of internal accounting controls.

44.     As a result of the conduct described above, Kimble and Kunkler violated Section 13(b)(5) of the Exchange Act  [15 U.S.C. § 78m(b)(5)].

## SIXTH CLAIM

### Violations of Exchange Act Rule 13b2-1

45.     Paragraphs 1 through 27 above are hereby re-alleged, and incorporated herein by reference.

46.     Rule 13b2-1 under the Exchange Act [17 C.F.R. § 240.13b2-1] provides that no person shall, directly or indirectly, falsify or cause to be falsified, any book, record or account subject to Section 13(b)(2)(A) of the Exchange Act.

47.     As a result of the conduct described above, Kimble violated Exchange Act Rule 13b2-1 by directly or indirectly falsifying and causing to be falsified SRC books, records, and accounts.

## SEVENTH CLAIM

### Violations of Exchange Act Rule 13b2-2

48.     Paragraphs 1 through 27 above are hereby re-alleged, and incorporated herein by reference.

-11-

49.     Exchange Act Rule 13b2-2 [17 C.F.R. § 240.13b2-2] prohibits any director or officer of an issuer from making a materially false or misleading statement to an accountant in connection with any audit required under the Exchange Act, or omitting to state to an accountant, in connection with such an audit, material facts without which statements would be misleading to an accountant, in light of the circumstances under which the statements were made.

50.     As a result of the conduct described above, Kimble violated Exchange Act Rule 13b2-2 [17 C.F.R. § 240.13b2-2].

## PRAYER FOR RELIEF

WHEREFORE, the Commission respectfully requests that this Court:

### I.

Enter a Final Judgment ordering Kimble to pay a civil money penalty, pursuant to Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)]; and

### II.

Enter a Final Judgment ordering Kunkler to pay a civil money penalty, pursuant to Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)].

Respectfully submitted,

GREGORY G. LOCKHART
United States Attorney


Donetta D. Wiethe
Ohio Bar No. 0028212
Assistant United States Attorney
Southern District of Ohio
221 E. 4th Street, Suite 400
Cincinnati, OH 45202
Phone: (513) 684-3711
Facsimile: (513) 684-6972
donetta.wiethe@usdoj.gov
**Trial Attorney for Plaintiff**


Jennifer D. Brandt
Texas Bar No. 00796242
U.S. Securities and Exchange Commission
801 Cherry Street, Suite 1900
Fort Worth, TX 76102
Phone: (817) 978-6442
Facsimile: (817) 978-2700
brandtj@sec.gov
**Of Counsel for Plaintiff**


Dated: October 3, 2005